USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8-6-2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
VIELKA M. REYES,

                                        Plaintiff,          **OPINION & ORDER**

               -against-                                    17-CV-01851 (KHP)

NANCY BERRYHILL, Acting Commissioner of the
Social Security Administration

                                        Defendant.
-------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

       Plaintiff Vielka M. Reyes ("Plaintiff"), who is represented by counsel, commenced this

action against Defendant Commissioner of the Social Security Administration (the

"Commissioner"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g), seeking

review of the Commissioner's decision that Plaintiff was not disabled under Sections 216(i) and

223(d) of the Act from August 1, 2013, the alleged disability onset date ("DOD"), through the

date of the decision.

       The parties submitted a joint stipulation in lieu of cross-motions for judgment on the

pleadings ("the Joint Stipulation" or "JS," Doc. No. 18) pursuant to this Court's Order at Doc.

No. 12.  For the reasons set forth below, the Commissioner's motion is GRANTED and Plaintiff's

motion is DENIED.

**BACKGROUND**

*I.    Summary of Claim and Procedural History*

       Plaintiff's disability arises primarily out of a workplace accident.  In or about June 2013,

when she was approximately 38 years old and working as a home attendant/home health aide,

Plaintiff fell while mopping.  (*See* Administrative Record ("R.") at 56, 283.)  This accident caused injury to her back, knee and shoulder.  Additionally, Plaintiff consulted mental health providers about depression, anxiety, and post-traumatic stress resulting from the accident.

Plaintiff's application for disability insurance benefits ("DIB") cites disability due to right leg impairment, lumbar spine impairment, cervical spine impairment, herniated disc, bulging disc, bilateral hip pain, and right arm impairment.  (*Id.* at 81-82, 196.)  She also alleges depression and post-traumatic stress disorder.  (*Id.* at 226.)  Based on her asserted disability, high school education, limited skills given her past work as a hotel housekeeper and home health aide (*id.* at 87, 198), and asserted lack of fluency in English, she contends that she satisfies the criteria for receiving DIB.[1]

Plaintiff saw medical providers about migraines and low back pain prior to the accident but complained of more extensive pain thereafter, ultimately leading to surgery for her right knee and right shoulder, physical therapy, a lumbar epidural steroid injection and fleuroscopic guidance, and the occasional use of prescription medications (including Cymbalta, Ibuprofen, Gabapentin, and Naproxen).  (*Id.* at 199, 248, 253, 259-60, 293-94, 326-33, 335-36, 338, 386, 414, 428, 460.)

Plaintiff filed for workers' compensation benefits after her accident but was not awarded benefits.  (*Id.* at 178.)  She consulted the following medical providers in connection with her workers' compensation claim: Dr. Alexios Apazidis (orthopedic surgeon), Dr. Marc

---

[1] The Court notes that Plaintiff's Function Report, filed in connection with Plaintiff's application for disability benefits is filled out in Spanish, and no English translation is included in the record.  (R. 204-213.)  The Court therefore relies exclusively on Plaintiff's testimony from her hearing when reviewing Plaintiff's statements concerning her alleged disability, including her physical and mental abilities and limitations.

2

Appel (orthopedic surgeon), Dr. Solomon Miskin (psychiatrist), Dr. Yolanda Bernard (internist/emergency care), Dr. Mitchell Zeren (chiropractor), Dr. Gabriel Dassa (orthopedic surgeon), and Dr. Aric Hausknecht (neurologist and pain management specialist). (*Id.* at 284, 300, 319, 327, 329, 333, 335, 343, 345, 347, 349, 351, 374, 378, 474-80, 481-84.) In addition, Plaintiff saw the following additional medical providers: Jacobi Medical Center, Dr. Arden Kaisman, Dr. Marilee Mescon, and Dr. Juraci Da Silva. (*Id.* at 264-65, 267-69, 270, 283-84, 313, 351-63, 435-39.) The Court conducted a plenary review of the entire administrative record. The Court assumes knowledge of and does not repeat here all of the stipulated facts concerning Plaintiffs' medical treatment. (*See* JS at 3-26.)

On January 8, 2014, Plaintiff filed an application for a period of disability insurance benefits, alleging disability beginning August 1, 2013. (R. 26, 178-79.) The claim was denied on April 15, 2014. (*Id.* at 93-104.) On April 21, 2014, Plaintiff submitted a request for a hearing. (*Id.* at 105.) A video hearing was held on April 27, 2016 before Administrative Law Judge ("ALJ") Lynn Neugebauer. (*Id.* at 26-41.) Plaintiff was represented by counsel at the hearing. Yaakov Taitz, PhD., a vocational expert, testified at the hearing. (*Id.* at 46-79.) On July 26, 2016, ALJ Neugebauer issued a decision holding that Plaintiff was not disabled, and therefore not entitled to benefits. (*Id.* at 20-41.) On September 19, 2016, Plaintiff requested review of the ALJ's decision, (*id.* at 19), which the Appeals Council denied on January 27, 2017. (*Id.* at 1-5.)

Notwithstanding her application for DIB, Plaintiff performed work as a babysitter in 2014 and 2015, earning $13,920 and $13,575 in those respective years. (*Id.* at 191.) At the April 2016 hearing before the ALJ, Plaintiff testified that she stopped working as a babysitter because the family moved and she was no longer able physically to babysit. (*Id.* at 54-55.)

At the hearing, Plaintiff described her symptoms and physical limitations. She testified that she cannot walk for more than ten minutes without pain because the pain in her legs is so strong. (*Id.* at 58.) When asked about her current inability to work, she stated that she is always tired and has shoulder pain and limited strength. (*Id.* at 56-60.) Plaintiff testified that she has difficulty walking, standing, and sitting due to knee pain and because her knees "lock up." (*Id.* at 58.) She also testified that that she has lost balance and fallen because of her knee problems. (*Id.* at 64.) She testified that she cannot lift or carry more than five pounds due to problems with her hands and torn tendons in her shoulder. (*Id.* at 60.) Plaintiff asserted that she has no strength in her right hand. (*Id.* at 59-60.) She also testified that she has neck pain, which makes it difficult to move from side to side. (*Id.* at 62.) Finally, she stated that she has difficulty concentrating and sleeping due to her discomfort. (*Id.* at 65-66.)

With regard to her daily routines and functioning, Plaintiff testified that, due to shoulder pain, she has difficulty getting dressed or washing herself. (*Id.*) She told the ALJ she cannot cook, do laundry, or shop, but is able do light chores such as dusting. (*Id.* at 60-61.) Plaintiff stated that she spends most days lying down to alleviate her pain and that she has headaches. (*Id.* at 63.) She testified that she feels depressed because she cannot do anything for herself, that she sometimes has crying episodes, and that she no longer likes to see any of her friends. (*Id.* at 64-65.)

## II.    *The Commissioner's Decision*

The ALJ set forth the rationale for her decision denying benefits according to the five-step sequential process contemplated in the applicable regulations. 20 C.F.R. § 404.1520(c)(a)(4)(i-v). As a threshold matter, the ALJ determined that Plaintiff meets the

insured status requirements of the Act through December 31, 2019.  (R. 28.)  At step one, the

ALJ found that Plaintiff has not engaged in substantial gainful activity since the DOD, August 1,

2013.[2]  (*Id.*)  At the second step of the analysis, the ALJ determined that Plaintiff had the

following severe impairments: degenerative disc disease of the lumbar and cervical spines,

right shoulder impairment post-arthroscopic rotator cuff repair, right knee impairment post-

arthroscopic meniscus repair, bilateral hip pain, depression and anxiety disorders.  (*Id.* at 29.)

However, the ALJ concluded that none of these impairments, considered alone or in

combination, met or medically equaled the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  (*Id.*)  With regard to Plaintiff's degree of

limitation resulting from her mental disorders, the ALJ found that Plaintiff had the following

limitations under 20 CFR, Part 404, Subpart P, Appendix 1: mild restriction in activities of daily

living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining

concentration, persistence, or pace, and no episodes of decompensation.  (*Id.*)  The ALJ

subsequently found that Plaintiff retained the residual functional capacity ("RFC") to perform

sedentary work, provided such work involved only "simple tasks."  (*Id.* at 31.)  Based on this

RFC, at step four, the ALJ concluded Plaintiff is unable to perform any of her past relevant work

(*i.e.,* as a housekeeper or home health aide).  (*Id.* at 39.)  Nevertheless, considering Plaintiff's

age, education, work experience, and RFC, the ALJ concluded at step five of her analysis that

there are jobs that exist in significant numbers in the national economy that Plaintiff can

---

[2] The ALJ did note Plaintiff's continued work as a babysitter, but concluded that it was unnecessary to determine whether the work constitutes substantial gainful activity because there exists another valid basis for denying the Plaintiff's application.  (*Id.*)

perform. (*Id.* at 40.) Accordingly, the ALJ determined that Plaintiff has not been disabled from August 1, 2013 through the date of the decision. (*Id.*)

**DISCUSSION**

**I.    *The Applicable Law***

    **A.  *Judicial Standard of Review of Commissioner's Decision***

The court's review of an appeal of a denial of disability benefits is limited to two inquiries. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the court must determine whether the Commissioner applied the correct legal principles in reaching a decision. 42 U.S.C. § 405(g); *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Second, the court must decide whether the Commissioner's decision is supported by substantial evidence in the record. *Id.* So long as they are supported by substantial evidence in the administrative record, the findings of the ALJ after a hearing as to any facts are conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3).

An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). This applies to an ALJ's failure to follow an applicable statutory provision, regulation, or Social Security Ruling ("SSR"). *See, e.g.*, *id.* (regulation); *Schaal v. Callahan*, 993 F. Supp. 85, 93 (D. Conn. 1997) (SSR). In such a case, the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), especially if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Crysler v. Astrue*, 563 F. Supp. 2d 418, 429 (N.D.N.Y 2008).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must "conduct a plenary review of the administrative record to determine if there is

6

substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (*per curiam*) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). The substantial evidence standard means once an ALJ finds facts, a reviewing court may reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Id.* at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record." 42 U.S.C. §§ 423(d)(5)(B), 1382a(3)(H)(i). The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based." 42 U.S.C. § 405(b)(1). While the ALJ's decision need not "mention[] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (*per curiam*), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (internal quotation marks omitted), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability. *See Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268-69 (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01-cv-1120 (DC), 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence); *see also Zabala*, 595 F.3d at 409 (reconsideration of improperly excluded treating physician evidence typically requires remand). If the decision denying benefits applied the correct legal standards and is based on substantial evidence, the reviewing court must affirm; if not, the court may modify or reverse the decision, with or without remand. 42 U.S.C. § 405(g).

***B. Legal Principles Applicable To The Commissioner's Disability Determination***

Under the Social Security Act, every individual considered to have a "disability" is entitled to disability insurance benefits.  42 U.S.C. § 423(a)(1).  The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether an individual is entitled to receive disability benefits, the Commissioner is required to conduct the following five-step inquiry:

(1) First, determine whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).

(2) Second, if not gainfully engaged in any activity, determine whether the claimant has a "severe impairment" that significantly limits his or her ability to do basic work activities.  Under the applicable regulations, an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities is considered "severe."  20 C.F.R. § 404.1520(c)(a)(4)(ii).

(3) Third, if the claimant has a "severe impairment," determine whether the impairment is one of those listed in Appendix 1 of the regulations – if it is, the Commissioner will presume the claimant to be disabled and the claimant will be eligible for benefits.  20 C.F.R. §

404.1520(c)(a)(4)(iii). At this stage, the Commissioner also must determine the claimant's residual functional capacity ("RFC"); that is, her ability to perform physical and mental work activities on a sustained basis despite her impairments.[3] 20 C.F.R. § 404.1520(e).

(4) Fourth, if the claimant does not meet the criteria for being presumed disabled, the Commissioner next must determine whether the claimant possesses the RFC to perform her past work. 20 C.F.R. § 404.1520(a)(4)(iv).

(5) Fifth, if the claimant is not capable of performing work she performed in the past, the Commissioner must determine whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520; *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *Gonzalez v. Apfel*, 61 F. Supp. 2d 24, 29 (S.D.N.Y. 1999). The claimant bears the burden at the first four steps. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). However at the last step, the Commissioner has the burden of showing that "there is other gainful work in the national economy which the claimant could perform." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998).

## II. Analysis

### A. The ALJ's Application of Legal Principles

#### i. Development of the Record

In Social Security proceedings, the ALJ must affirmatively develop the record on behalf of all claimants. *See Moran,* 569 F.3d at 112. As part of this duty, the ALJ must investigate the

---

[3] A claimant's residual functional capacity is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); *see also* SSR 96-9P (clarifying that a claimant's residual functional capacity is his maximum ability to perform full-time work on a regular and continuing basis). The ALJ's assessment of a claimant's residual functional capacity must be based on "all relevant medical and other evidence," including objective medical evidence, such as x-rays and MRIs, the opinions of treating and consultative physicians, and statements by the claimant and others concerning the claimant's impairments, symptoms, physical limitations, and difficulty performing daily activities. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1545(a)(3)).

facts and develop the arguments both for and against granting benefits. *Id.* Whether the ALJ

has met his/her duty to develop the record is a threshold question. Thus, before reviewing

whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C.

§ 405(g), "the court must first be satisfied that the ALJ provided plaintiff with a full hearing

under the Secretary's regulations and also fully and completely developed the administrative

record." *Scott v. Astrue,* No. 09-cv-3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9,

2010) (internal quotations and citations omitted).

Plaintiff argues that the ALJ failed to fully develop the record regarding Plaintiff's work

after the DOD. (JS 42.) But, Plaintiff fails to identify any evidence that is missing from the

record concerning the work she performed after her alleged onset of disability. The Court has

carefully reviewed the full record and finds that the ALJ sufficiently developed the record

concerning Plaintiff's work after August 13, 2013 by questioning her about her babysitting and

earnings from that work as well as her reasons for stopping that work. (R. 54-55.) The ALJ

analyzed this testimony in her decision as well. (*Id.* at 32.) Thus, the ALJ adequately developed

the record.

### ii. *Treating Physician Rule*

Plaintiff alleges that the ALJ improperly failed to afford considerable weight to treating

physicians Dr. Dassa and Dr. Da Silva and failed to provide good reasons for her decision to not

afford considerable weight to the opinions. (JS 33-34.)

Under the treating physician rule, an ALJ is required to give controlling weight to the

medical opinion of a claimant's treating physician if it is well-supported by medical findings and

"is not inconsistent with the other substantial evidence" in the record. *See Monroe v. Comm'r*

*of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) (citing *Shaw*, 221 F.3d at 134; 20 C.F.R. §

404.1527(c)(2)).  If there are genuine conflicts in the medical evidence, the Commissioner may

resolve them and find that the treating physician's opinion is not entitled to controlling weight.

*Id.* (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

"When controlling weight is not given to a treating physician's assessment, the ALJ must

consider the following factors to determine the weight to give the opinion: (1) the length of

treatment relationship and frequency of examination; (2) the nature and extent of the

treatment relationship; (3) the evidence in support of the opinion; (4) the opinion's consistency

with the record as a whole; (5) whether the opinion is that of a specialist; and (6) any other

relevant factors."  *Id.* (citing 20 C.F.R. § 404.1527).  The ALJ must comprehensively set forth her

reasons for the weight assigned to a treating physician's opinion.  *Id.* (internal citation omitted).

Here, the ALJ's consideration of Dr. Dassa's and Dr. Da Silva's opinions comports with

the treating physician rule.

Dr. Dassa opined that Plaintiff was "totally" disabled.  The ALJ was not required to give

Dr. Dassa's opinion that Plaintiff was totally disabled any weight, let alone controlling weight.

The question of whether a claimant is "disabled" is a determination reserved exclusively to the

Commissioner.  *See* 20 C.F.R. § 404.1527(d)(1); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.

1999) ("A treating physician's statement that the claimant is disabled cannot itself be

determinative.").  Moreover, the ALJ sufficiently set forth the reasons why she was not giving

Dr. Dassa's opinion controlling weight; the ALJ found that there was little objective support for

Dr. Dassa's opinion that Plaintiff was totally disabled and that the opinion was in "direct conflict

with the medical evidence of record and the [Plaintiff's] own post-onset work activity."  (R. 37.)

This Court has carefully reviewed the full record and finds that the ALJ's conclusion that Plaintiff was not "totally disabled" is supported by substantial evidence in the record, including Dr. Dassa's own reports. Dr. Dassa reported that Plaintiff had some swelling, discomfort, and limited range of motion on her right shoulder, but that her overall restriction of motion and tenderness were mild. (*Id.* at 291-92.) Dr. Dassa also routinely reported intact motor, sensory and neurovascular examinations of the right shoulder, and no neurological deficits in Plaintiff's right knee. (*Id.* at 289, 324, 414-15, 460-64, 472.)

The Court is also mindful that Dr. Dassa evaluated Plaintiff in connection with her application for workers' compensation. "[F]indings of disability for workers' compensation purposes are of limited utility for disability purposes under the [Act]. . . The [Act] uses its own definition of disability." *DeJesus v. Chater*, 899 F. Supp. 1171, 1177 (S.D.N.Y. 1995); *see also Fortier v. Astrue*, No. 09-cv-993 (RJS) (HBP), 2010 WL 1506549, at *24 (S.D.N.Y. Apr. 13, 2010). Thus, the ALJ properly concluded that Dr. Dassa's "credibility and relevance" must be "carefully assessed" because of his involvement with Plaintiff's workers' compensation claim. (R. 37.)

The ALJ's analysis of Dr. Da Silva's opinion is less straight-forward, though still adequate under the treating physician rule. Dr. Da Silva conducted a clinical psychological evaluation of Plaintiff and opined that Plaintiff appeared to be presently functioning on the low average native endowment range of cognitive intelligence with slightly affected attention, concentration, and memory functioning. (*Id.* at 438.) Dr. Da Silva found that Plaintiff presented difficulty recalling daily experiences and seemed "spaced out" and distracted at times. (*Id.*)

The ALJ referenced Dr. Da Silva's report numerous times throughout her decision, relied on it as support when assessing Plaintiff's RFC, and characterized Dr. Da Silva as "a medical[ly]

acceptable source." (R. 30, 35, 38.) At the same time, the ALJ criticized Dr. Da Silva's opinions, writing that his statements about Plaintiff contained "no explanation of how [they] correlate[d] to [Plaintiff's] ability to perform work activity." (R. 38.) The ALJ also stated that she was giving "little weight" to the global assessment of functioning ("GAF") scores of 50-60[4] that Dr. Da Silva assigned Plaintiff, but provided clear and sufficient reasons for the weight she gave to the GAF scores. (*Id.* at 38.) Although the ALJ discussed Dr. Da Silva's report, she did not explicitly state the precise weight she afforded to Dr. Da Silva's overall opinion. However, Dr. Da Silva's reports are consistent with the other medical evidence indicating that Plaintiff had mild to moderate difficulty in the areas of attention, concentration, and memory. (*Compare* R. 438 with R. 259, 262, 481-84.) Plaintiff also testified that she did not have memory issues. (*Id.* at 64.) The ALJ's determination that Plaintiff has moderate difficulties in maintaining concentration, persistence or pace is thus consistent with Dr. Da Silva's opinion and the other evidence in the record. (R. 30.) Therefore, notwithstanding the ALJs failure to state the weight given to Dr. Da Silva's opinion, this was harmless error. The ALJ's ultimate conclusion would not have changed as it was fully consistent with Dr. Da Silva's opinion and other medical evidence regarding Plaintiff's limitations and RFC. *See, e.g.*, *Carway v. Astrue*, No. 06-cv-13090 (LMS), 2010 WL 6121686, at *11 (S.D.N.Y. Aug. 17, 2010) ("Dr. Tsairis' reports are consistent with the reports of Plaintiff's other treating physicians. Therefore, the ALJ's failure to mention them or explain the weight given to Dr. Tsaris is harmless error"); *Walzer v. Chater*, No. 93-cv-

---

[4] The *Diagnostic and Statistical Manual of Mental Disorders* ("DSM") notes that a GAF score of 41-50 reflects serious symptoms, whereas a GAF score of 51-60 reflects moderate symptoms. *See Diagnostic and Statistical Manual of Mental Disorders*, 27-34 (4th ed., text rev. 2000). Dr. Da Silva's forms tweak these scores and describe a GAF score 50-60 as reflecting moderate symptoms. (R. at 352-63.) Regardless, the fifth edition of the DSM no longer includes GAF scores as a reliable means of evaluating an individual's functioning.

13

6240 (LAK), 1995 WL 791963, at *9 (S.D.N.Y. Sept. 26, 1995) ("While the ALJ should have discussed [the treating physician's] report in his decision . . . the ALJ's failure to do so was harmless error, since his written consideration of [the treating physician's] report would not have changed the outcome of the ALJ's decision"); *see also Jones v. Barnhart*, No. 02-cv-0791 (SHS), 2003 WL 941722, at *10 (S.D.N.Y. Mar. 7, 2003) (ALJ's failure to explain the weight that he gave to the opinions of Plaintiff's treating physicians constitutes harmless error because the ALJ "engaged in a detailed discussion of their findings . . . and his decision does not conflict with them.").

### iii. *Plaintiff's Credibility*

Plaintiff alleges that she is entitled to "substantial credibility" because of her good work record. (JS 2.) To the extent that Plaintiff is arguing that the ALJ's decision not to rely on her good work history was erroneous, Plaintiff's argument is without merit. Although it is true that "a good work history may be deemed probative of credibility," it remains "just one of many factors" appropriately considered in assessing credibility. *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (summary order) (quoting *Schaal v. Apfel*, 134 F.3d 496, 502-03 (2d Cir. 1998)). Here, other factors, such as the inconsistency between Plaintiff's testimony and her medical records, weigh against a positive credibility finding as to Plaintiff's subjective assessment of her symptoms. *See id.* For example, Plaintiff testified at her hearing that she cannot hold anything in her right hand and can only occasionally reach, handle, or feel with her right hand. (R. 59-60.) However, the medical evidence in the record does not support such a limitation on the use of her right hand. Rather, the evidence indicates that Plaintiff's grip strength and sensory motor function were grossly intact. (*See, e.g.*, r. at 85-86, 253, 259, 262, 316.)

14

Further, the ALJ did not ignore Plaintiff's work history. To the contrary, the ALJ cited to Plaintiff's employment history and even considered how Plaintiff continued to work after the alleged onset date. (R. 28, 38-39.) Accordingly, the ALJ's decision not to rely exclusively on Plaintiff's good work history was not erroneous. *See, e.g.*, *Campbell*, 465 F. App'x at 7; *Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (summary order) ("That [Plaintiff's] good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination."); *Rousey v. Comm'r of Social Security*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018).

### iv. Vocational Expert Testimony

Plaintiff asserts that the ALJ "failed to take into account how [Plaintiff's] illiteracy would hamper her search for a job" and failed to fully consider Plaintiff's "ability to communicate in English on the job base." (JS 43.) This Court interprets Plaintiff's contention to argue that the ALJ failed to rely on the testimony of vocational expert Dr. Taitz in concluding that jobs exist in significant numbers in the national economy that Plaintiff could perform. To the extent Plaintiff is arguing that the ALJ impermissibly relied on the Medical-Vocational Guidelines (the "Grids"), rather than the vocational expert testimony, in light of Plaintiff's educational and/or non-exertional limitations, Plaintiff's argument is without merit.

The Commissioner has the burden of showing that "there is other gainful work in the national economy which the claimant could perform." *Balsamo*, 142 F.3d at 418. Ordinarily, the Commissioner may satisfy this burden by relying on the applicable Grids in 20 C.F.R. Part 404, Subpart P, Appendix 2. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). However, where a claimant suffers from both exertional and non-exertional impairments, and where a

claimant's non-exertional impairments "significantly limit the range of work permitted by his exertional limitations," reliance on the Grids is insufficient and the ALJ must require the Commissioner to present "the testimony of a vocational expert or other similar evidence regarding the existence of jobs in the national economy for an individual with claimant's limitations." *Id.* at 603-06. A non-exertional impairment is "significantly limiting" when it "so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013).

Here, a vocational expert was not necessary because Plaintiff's non-exertional limitations did not "significantly limit the range of work permitted by [her] exertional limitations." *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (quoting *Bapp*, 802 F.2d at 603). The ALJ did find that Plaintiff had additional limitations (she is limited to performing "simple tasks"), but concluded, based on the record evidence as a whole, that Plaintiff's additional limitation had little or no effect on the occupational base of unskilled sedentary work because Plaintiff "is able to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers and usual work situations, and she is able to deal with changes in a routine work setting." (R. 40.) In so concluding, the ALJ adequately explained how Plaintiff's limitation would impede her capacity to perform sedentary work, but that the limitation would not significantly limit the range of work that she could perform. This determination is supported by substantial evidence in the record.[5]

---

[5] As the ALJ explains (r. 40), SSR 85-15 lists the requirements of unskilled work to include "the abilit[y] (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers and usual work situations; to deal with changes in a routine work setting" and "ordinarily involve[s] dealing primarily with objects, rather than with data or people." SSR 85-15, 1985 WL 56857, at *4 (1985); *see also* SSR 96-9p, 1996 WL 374185 (1996) (providing same requirements for a finding of not disabled

Moreover, the ALJ found that Plaintiff had only mild restrictions in her activities of daily living and in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (*Id.* at 30.) These non-exertional impairments are simply not significant enough to have interfered with Plaintiff's ability to work. *See Mitchell v. Colvin*, No. 14-cv-4156 (JGK), 2015 WL 5306208, at *7 (S.D.N.Y. Sept. 10, 2015) ("The record in this case does not establish any non-exertional limitations that significantly diminished the plaintiff's ability to work. The ALJ found that Plaintiff had at most mild difficulties in activities of daily living and social functioning, an[d], at most, moderate problems in concentration, persistence, and pace.").

Finally, the fact that Plaintiff has both exertional and non-exertional impairments does not require the ALJ to rely on vocational expert testimony. The Second Circuit has held that "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Bapp*, 802 F.2d at 603. Instead, the "application of the [Grids] and the necessity for expert testimony must be determined on a case-by-case basis." *Id.* at 605.

Instead, the ALJ properly relied on the Grids when determining whether there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.[6] The Grids take into account Plaintiff's RFC in conjunction with Plaintiff's age, education, and previous work experience. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2

---

where claimant has an RFC for less than a full range of sedentary work). Thus, "[a] substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." *Id.* The record reflects no such substantial loss, but rather that Plaintiff was only mildly or moderately limited in her ability to meet these requirements. (R. 352-63, 435-439, 481-84.)

[6] The ALJ did reference Dr. Taitz's testimony regarding Plaintiff's past relevant work in her opinion. (R. 39.)

(Column three labeled "Education" in Table No. 1 – Residual Functional Capacity: Maximum

Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically

Determinable Impairment(s)); *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

Thus, by applying the Grids, the ALJ necessarily considered Plaintiff's level of education.

Specifically, the ALJ determined that Plaintiff was born in February 1975, and thus was a

younger individual (*i.e.,* between the ages of 18-44), that she was illiterate but able to

communicate in English, and that transferability of job skills was not material. (R. 39.) These

findings squarely correspond to Rule 201.23 of the Grids[7], which directs a finding of not

disabled for a younger individual age 18-44, who is illiterate or unable to communicate in

English, with unskilled or no previous work experience. Thus, the ALJ sufficiently considered

Plaintiff's language capabilities and education when determining Plaintiff's ability to find a job.

Regarding Plaintiff's ability to communicate in English, the ALJ opined that Plaintiff

"does not understand English" but later concluded Plaintiff "is able to communicate in English."

(*Id.* at 32, 39.) Plaintiff testified with the assistance of an interpreter at her hearing, though

some of her medical providers noted that she spoke English (*id.* at 251, 253, 266 ("patient

speaks English, translator not required"), 306), or at least had "limited English proficiency" (*id.*

at 245, 248). Further, Plaintiff attended high school through the 10th grade in the United

States, and then graduated from high school in the Dominican Republic. (*Id.* at 53.) The record

thus supports a conclusion that Plaintiff can speak some English and can communicate in

---

[7] The ALJ mistakenly referred to Rule 201.25 in the Grids. However, because the correct rule in the Grids (201.23) also directed a finding of not disabled, the ALJ's misapplication of the Grid rule was harmless error. *See Pritchard v. Colvin*, No. 13-cv-945 (CFH), 2014 WL 3534987, at *8-9 (N.D.N.Y. Jul. 17, 2014) (ALJ's reliance on wrong Grid rule is harmless error where there exists another Grid rule applicable to plaintiff which would support the same determination made using the wrong Grid rule).

English, though not fluently.  Even though Plaintiff has a limited education, does not speak English fluently, and has no transferable skills, under Rule 201.23 of the Grids, she is not disabled.  *See Hernandez v. Commissioner of Social Security*, No. 96-cv-1585 (DLC), 1997 WL 566119, at *5 (S.D.N.Y. Sept. 10, 1997) ("[Plaintiff] was thirty-eight years old at the time he applied for disability.  Even though plaintiff has a limited education, does not speak English fluently, and he has no transferable skills, under the Vocational Medical Guidelines for a residual functional capacity for sedentary work, plaintiff is not disabled.").  Thus, the ALJ did not err in her finding of Plaintiff's RFC or lack of disability.

Accordingly, the ALJ did not err in failing to rely on the vocational expert's testimony because she concluded that Plaintiff's non-exertional impairments had little to no effect on Plaintiff's ability to perform unskilled sedentary work.

### B.  *Substantial Evidence in Support of Commissioner's Decision*

The ALJ determined that Plaintiff retained the RFC to perform sedentary work, except that Plaintiff is "limited to performing simple tasks."  (*Id.* at 31.)  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."  20 C.F.R. § 404.1567(a).  However, "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  *Id.*  Medical evidence in the record, together with Plaintiff's own statements about her functional abilities during the relevant time period, supports the ALJ's RFC determination of sedentary work.  The Court addresses the

medical evidence regarding Plaintiff's physical impairments and Plaintiff's mental impairments separately below.

### i. Plaintiff's Physical Impairments

Plaintiff alleges physical impairments of her right shoulder, right knee, rotator cuff, lumbar and cervical spines, and bilateral hip. (R. 29.) Plaintiff objects to the ALJ's RFC finding because Plaintiff alleges her physical conditions, "in fact were severe." (JS 40.) Plaintiff also seems to be arguing that her physical impairments satisfied Listings §§ 1.02 and 1.04, and therefore the ALJ's RFC determination was improper.[8] (*Id.* at 38-40.)

Listing § 1.02 concerns the major dysfunction of a joint, which is characterized by "gross anatomical deformity and chronic joint pain and stiffness with signs of limitation or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or anyklosis of the affected joint(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02. Listing § 1.02 also requires evidence of inability to ambulate effectively or inability to perform fine and gross movements effectively. *Id.*

Listing § 1.04 concerns disorders of the spine and requires evidence of a compromised nerve root with additional findings of either (a) evidence of a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight-leg raising test; (b) spinal

---

[8] Confusingly, Plaintiff writes in the Joint Stipulation that her shoulder and knee impairments do not meet Listing 1.02, but then writes that the ALJ erred in finding that Plaintiff's shoulder and knee impairments fail to meet Listing 1.02. (JS 38-39.) The Court interprets Plaintiff's argument to be that her impairments **did** meet Listings 1.02 and 1.04.

arachoditis; or (c) lumbar spinal stenosis, resulting in inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.

The ALJ's conclusion that Plaintiff does not meet Listings §§ 1.02 and 1.04 and that Plaintiff had the RFC to perform sedentary work is supported by substantial evidence in the record. First, Plaintiff failed to present the required imaging of joint space narrowing, bony destruction, or anyklosis required under Listing § 1.02. Additionally, the record does not demonstrate compromise of a nerve root required under Listing § 1.04. Further, the medical records show that Plaintiff's impairments did not meet or medically equal the severity of Listings §§ 1.02 and 1.04. While there was some evidence of sensory deficit in Plaintiff's right leg (*see, e.g.*, r. at 265, 270, 284), Plaintiff's strength was often five out of five throughout and she had intact fine motor movements and intact neurological examination. (*Id.* at 259, 262, 264, 288-89, 302-03, 376, 414, 460-61, 464-65, 472.) In August 2013, Plaintiff's straight leg raise testing was negative. (*Id.* at 264.) An August 2013 MRI revealed only mild degenerative changes with no dominant disk herniation and no finding of nerve root compromise. (*Id.* at 273.) An August 2013 NCV/EMG study also revealed no evidence of lumbar radiculopathy. (*Id.* at 267-69.)

In March 2014, Plaintiff's range of motion for her cervical spine, right shoulder, right knee all were normal. (*Id.* at 302-03.) Later in March 2014, Plaintiff had full ranges of motion of her knees, shoulders, ankles and cervical spine. (R. 315-16.) She had some weakness in her right arm and leg, but full strength on her left side. In addition, Plaintiff's joints were stable and non-tender and there were no signs of muscle atrophy. (*Id.*) She did not require help changing for the exam, getting on and off the exam table, and rising from a chair. (*Id.* at 315.)

21

In April and June 2015, following surgery and physical therapy, Plaintiff reported improvement of her pain and motion in her right shoulder. (*Id.* at 414, 460.) In July 2015, Plaintiff's straight leg raising test bilaterally was negative. (*Id.* at 464.)

Notwithstanding all of this evidence, Plaintiff argues that the medical records show that she had a limp and antalgic gait and that she walked with a cane. (JS 40.) While this is true, these findings do not show an "inability" to ambulate effectively, at best, she had a limp (at times observed to be mild) and used a cane. (*See, e.g.*, r. 302, 315, 324, 467, 472.)

Ultimately, the ALJ's determination that Plaintiff could perform sedentary work was based upon a thorough review of all of the medical evidence (*see id.* at 32-35), along with evidence that Plaintiff continued to work even after the alleged onset of her disability.

### ii. Plaintiff's Mental Impairments

Plaintiff states that the ALJ failed to fully consider Plaintiff's non-exertional limitations and the "psychiatric evidence." (JS 26, 32.) Specifically, Plaintiff alleges that the ALJ erred in finding that Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listing § 12.04. (*Id.* at 26, 40.) Plaintiff also argues that she meets the criteria of Listing § 12.06. (*Id.* at 28.) This Court finds that the ALJ properly applied the Listings and that the ALJ's conclusions regarding Plaintiff's mental impairments are supported by substantial evidence in the record.

Listing § 12.04 covers depressive and bipolar disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. To satisfy the listing, Plaintiff must have medical documentation of (1) depressive disorder, characterized by five or more of the following: depressed mood, diminished interest in almost all activities, appetite disturbance with change in weight, sleep disturbance,

observable psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, or thoughts of death or suicide; **and** (2) extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understand[ing], remember[ing], or apply[ing] information, interact[ing] with others, concentrat[ing], persist[ing], or maintain[ing] pace, or adapt[ing] or manag[ing] oneself." *Id.* Similarly, Listing § 12.06 covers anxiety and obsessive-compulsive disorders and requires the same evidence as (2) in § 12.04, as well as medical documentation of anxiety, characterized by three or more of the following: restlessness, easily fatigued, difficulty concentrating, irritability, muscle tension, or sleep disturbance. *Id.* § 12.06. For Plaintiff to show that her mental impairments match these Listings, she must "meet all the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of [a listing's] criteria, no matter how severely, does not qualify.").

The ALJ's conclusion that Plaintiff did not meet the Listings and that Plaintiff had the RFC to perform sedentary work (limited to performing simple tasks) is supported by substantial evidence. There is no medical evidence in the record to support a finding of extreme limitation or marked limitation of any of the areas of mental functioning laid out in requirement (2) under both Listings §§ 12.04 and 12.06. Plaintiff presented no evidence that she had a significant restriction in her daily activities or adapting or managing herself due to her depression.[9] Instead, any limitations in her activities of daily living are related to her physical impairments. (R. 59-61 (Plaintiff testifying that she has trouble washing, getting dressed, cooking, and doing

---

[9] In the Joint Stipulation, Plaintiff contends that she could not adapt herself to changing circumstances or exercise self-control because she "experienced spontaneous crying." (JS 27.) The Court is not convinced that this evidence shows that Plaintiff was unable to adapt.

laundry due to her physical pain).)  Plaintiff also did not have marked or extreme limitations in her ability to interact with others; she regularly worked during her alleged period of disability and picked up and dropped off a child at school.  (*Id.* at 54-55.)  As the ALJ noted, these activities demonstrate that Plaintiff was able to regularly engage with others at the child's school and with the child's parent and with the child.  (*Id.* at 30.)  The medical evidence also shows Plaintiff had only moderate difficulties in maintaining concentration, persistence, and pace.  (*Id.* at 435-38, 481-83.)  Finally, there was no evidence that Plaintiff experienced any episodes of decompensation, let alone repeated episodes of extended duration.

The ALJ spent a full paragraph discussing each of the above factors in detail.  She sufficiently scrubbed the record for all evidence relating to Plaintiff's mental impairments.  In addition, the ALJ limited Plaintiff's RFC of sedentary work to only performing simple tasks, thus taking into account Plaintiff's mental impairments.  The ALJ's conclusions regarding Plaintiff's mental impairments and her ability to perform sedentary work with the limitation of only performing simple tasks are supported by substantial evidence.

Therefore, this Court finds that the ALJ properly applied the Listings and issued a decision that is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.  This Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**
Dated: August 6, 2018
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge

24